1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10    FIDEL LEON ODIMARA,

11                            Petitioner,

12          v.

13    DREW BOSTOCK,

14                            Respondent.

CASE NO. 2:24-CV-572-JHC-GJL

REPORT AND RECOMMENDATION

NOTING DATE: **July 30, 2024**

15          Petitioner Fidel Leon Odimara, who is currently detained by U.S. Immigration and

16    Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,

17    Washington and is proceeding *pro se*, brings this 28 U.S.C. § 2241 habeas action contending his

18    detention is not mandatory, nor does it comply with the United States Constitution. Dkts. 1, 3.

19    Currently before the Court for consideration is Respondent's combined Motion to Dismiss the

20    Petition and Return. Dkt. 6.

21          Having considered the parties' submissions, the balance of the record, and the governing

22    law, the undersigned recommends that the Motion to Dismiss (Dkt. 6) be **GRANTED** and that

23    the Petition (Dkt. 3) either be **DISMISSED** for failure to exhaust or **DENIED** on the merits.

24

## I.    BACKGROUND

**A.    Immigration Status and Proceedings**

Petitioner is a native and citizen of Nigeria who entered the United States in 1997. Dkt. 3 at 2; Dkt. 7-1 at 1 (Exhibit A). Though he states he initially entered the United States on a tourist visa, Dkt. 3 at 2, Petitioner adjusted his status to Legal Permanent Resident on June 3, 2009. *Id.*; Dkt. 7-1 at 1 (Exhibit A).

On October 3, 2022, Petitioner was convicted and sentenced to 24-months' incarceration by the United States District Court, Central District of California, following his plea of guilty to the offense of Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h). Dkt. 7-2 at 175. As part of his guilty plea, Petitioner admitted that the underlying conspiracy involved funds exceeding $10,000. *Id.* at 12–15.

During his term of incarceration, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for removal of noncitizens convicted of aggravated felonies as defined in 8 U.S.C. § 1101(a)(43)(D) & (U). Dkts. 7-3 (Exhibit C), 7-4 (Exhibit D).

Following the completion of his sentence in December 2023, Petitioner was detained by ICE pending a final administrative determination of removal. Dkt. 7-5 (Exhibit E). Shortly thereafter, on January 2, 2024, Petitioner, through counsel, moved for a bond hearing in the immigration court. Dkt. 7-6 (Exhibit F). Though no specific date is provided in the record, Petitioner states he appeared before an Immigration Judge ("IJ") for an individualized bond hearing "on or about the end of January 2024." Dkt. 3 at 3. Following the hearing, the IJ found it lacked jurisdiction to consider Petitioner's bond as his detention pending the issuance of a final removal order was statutorily mandated by 8 U.S.C. § 1226(c). Dkt. 7-7 (Exhibit G). Petitioner

reserved, but did not file, an appeal to the IJ's decision. *Id.* at 3 (deadline to appeal February 29, 2024); Dkt. 3 at 5.

**B.     Federal Habeas Petition**

Petitioner filed the instant Petition for writ of habeas corpus on April 26, 2024, originally naming Alejandro Mayorkas as Respondent. Dkts. 1, 3. On April 30, 2024, the Court entered an Order substituting Drew Bostock (the field office director for NWIPC) as Respondent and directed Respondent Bostock to show cause why the Court should not grant habeas relief. Dkt. 4. In response, Respondent filed a combined Motion to Dismiss the Petition and Return. Dkt. 6. Petitioner responded in opposition to the Motion to Dismiss, Dkt. 8, and Respondent replied in support, Dkt. 9. Therefore, this matter is now fully briefed and ripe for consideration.

## II.     DISCUSSION

The Petition raises two arguments for habeas relief: (1) the IJ erred in determining that Petitioner was convicted of an aggravated felony for which 8 U.S.C. § 1226(c) mandates detention and (2) his continued detention without an individualized bond hearing violates the due process clause of the Fifth Amendment to the United States Constitution. Dkt. 3 at 4–5; *see also* Dkt. 8. With respect to the first argument, Petitioner acknowledges that a conviction for money laundering under 18 U.S.C. § 1956(h) may qualify as an aggravated felony in some instances but asserts that his conviction does not qualify because "there was no [monetary] loss" attributed to him. *Id.* at 6. As relief, Petitioner requests that this Court order his release from custody or, in the alternative, order an individualized bond hearing. Dkt. 3 at 4.

Respondent maintains that Petitioner is not entitled to his requested relief, arguing that his detention is mandated by § 1226(c) and comports with due process. Dkts. 6, 9. Respondent argues further that the Petition should be dismissed on prudential grounds because Petitioner did

not exhaust his administrative remedies before seeking federal habeas relief. Dkt. 6 at 6–7; Dkt. 9 at 4.

The undersigned agrees with Respondent's exhaustion argument and finds the Petition should be dismissed on prudential grounds. However, out of an abundance of caution, the undersigned examines the Petition on the merits and, in doing so, finds the Petition may also be denied on the merits.

**A.    Petitioner Has Not Satisfied Prudential Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder,* 638 F.3d 1196, 1203 n. 3 (9th Cir. 2011). The necessity of exhaustion, therefore, is governed by sound judicial discretion. *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992), *superseded by statutory amendment as noted in Booth v. Churner,* 532 U.S. 731, 738(2001). Nevertheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro–Cortez v. INS,* 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez–Vargas v. Gonzales,* 548 U.S. 30, 35–36, n. 5 (2006).

To determine whether prudential exhaustion is appropriate, courts consider whether "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft,* 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors weigh in favor of prudential exhaustion, the requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George*

1  *Sec., Inc.,* 637 F.2d 685, 688 (9th Cir. 1981)). When a petitioner fails to exhaust prudentially

2  required administrative remedies and exhaustion is not waived, "a district court should either

3  dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted

4  remedies." *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011).

5      Here, Petitioner concedes he did not appeal the IJ's decision regarding his ineligibility for

6  an individualized bond hearing. Dkt. 3 at 5. Thus, the Court must consider whether

7  circumstances for application or waiver of prudential exhaustion exist. Based on the current

8  record, the second and third *Puga* factors weigh in favor of prudential exhaustion, and any of the

9  reasons to waive such exhaustion are lacking.

10      Petitioner disagrees, arguing that the delays incurred by pursuing an administrative

11  appeal and the Board of Immigration Appeals' ("BIA") inability to review his constitutional

12  claim would have made the exercise futile and caused him irreparable harm. Dkt. 3 at 5; Dkt. 8

13  5–6. He also argues that exhaustion is not required where a habeas petition challenges conditions

14  imposed on bond. *Id.*

15      Petitioner's second argument is unavailing because the instant Petition challenges the

16  denial of a bond hearing, not bond conditions. As for his first argument, Petitioner is correct that

17  the BIA could not grant his requested relief on constitutional grounds. This does not mean,

18  however, that filing an administrative appeal would have been a fruitless exercise as Petitioner

19  also seeks relief on statutory grounds. If the BIA were to resolve Petitioner's 18 U.S.C. § 1226(c)

20  argument in his favor, then it could have ordered the IJ to consider his eligibility for bond—

21  which is precisely the relief requested here. *See, e.g., Francisco Cortez v. Nielsen*, No. 19-cv-

22  00754-PJH, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019) (holding that constitutional issues

23  raised in an immigration habeas petition do not render an administrative appeal futile where the

24

1    BIA could grant relief without reaching the constitutional question) (citing *Sola v. Holder*, 720

2    F.3d 1134, 1136 (9th Cir. 2013).

3         Accordingly, the undersigned finds that prudential exhaustion is appropriate in this case

4    and recommends the Petition be dismissed for failure to exhaust. However, out of an abundance

5    of caution, the undersigned examines the Petition on the merits and recommends disposition of

6    this case on alternative grounds.

7    **B.    Petitioner's Detention is Statutorily Mandated**

8         In assessing the Petition on the merits, the Court begins with Petitioner's argument

9    regarding the statutory basis for his detention. Title 8 U.S.C. § 1226 provides the framework for

10   the arrest, detention, and release of noncitizens who are present in the United States and have

11   been placed in removal proceedings.[1] *Avilez v. Garland,* 69 F.4th 525, 529–530 (9th Cir. 2023).

12   Section 1226(a) grants the DHS discretionary authority to arrest and either to detain, or to release

13   on bond, noncitizens "pending removal proceedings," unless the noncitizen falls within one of

14   the categories of criminals described in § 1226(c), for whom detention is mandatory until

15   removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S. Ct. 830,

16   846–48 (2018). Section 1226(c)'s mandatory detention applies to any noncitizen who "is

17   deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii),

18   (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B).

19   //

20

21

22

---

23   [1]Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L.
     No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the
     Department of Justice ("DOJ") to the DHS, the DOJ's Executive Office for Immigration Review retained its role in
24   administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1    This case involves mandatory detention under § 1226(c) as Petitioner has been deemed

2    removable for committing an aggravated felony covered in 8 U.S.C. § 1227(a)(2)(A)(iii) and as

3    defined in §§ 1101(a)(43)(D) & (U). Dkt. 7-3 at 5 (Exhibit C).

4         Under Section 1101(a)(43), the term "aggravated felony" means:

5    (D) an offense described in section 1956 of Title 18 (relating to laundering of
     monetary instruments) or section 1957 of that title (relating to engaging in
6    monetary transactions in property derived from specific unlawful activity) if the
     amount of the funds exceeded $10,000; [and]
7
                                   * * *
8
     (U) an attempt or *conspiracy to commit an offense described in this paragraph.*
9
10   8 U.S.C. §§ 1101(a)(43)(D) & (U) (emphasis added). By arguing that he was not convicted of an

11   aggravated felony because he merely conspired to launder funds and was not directly responsible

12   for any monetary loss, Petitioner ignores the effect of Section 1101(a)(43)(U) on the definition of

13   an aggravated felony. Even if the Court were to accept that his conspiracy conviction does not

14   qualify as an aggravated felony under subsection (D), it clearly qualifies as an aggravated felony

     under the broad sweep of subsection (U).
15
         This result is confirmed by looking to the Ninth Circuit's decision in *Fuentes v. Lynch*,
16
     788 F.3d 1177 (9th Cir. 2015). Similarly, the *Fuentes* petitioner was convicted of conspiracy to
17
     commit money laundering and, as a result, was deemed removable for committing an aggravated
18
     felony as defined by §§ 1101(a)(43)(D) & (U). *Fuentes*, 788 F.3d at 1180. The Circuit Court first
19
     explained that immigration courts must look to the specific circumstances of a noncitizen's
20
     money-laundering conviction to determine whether the monetary threshold of subsection (D) is
21
     met. *Id.* at 1181 (citing *Nijhawan v. Holder*, 557 U.S. 29 (2009)). And, when looking to the
22
     underlying circumstances of a conviction, the relevant inquiry is the total amount of funds
23
     laundered as opposed to the monetary loss to a victim. *Id.* at 1183 (citing *Chowdhury v. INS*, 249
24

1  F.3d 970, 972–74 (9th Cir. 2001)). Using this approach, the Circuit Court concluded there was

2  sufficient evidence in the petitioner's presentencing report to find that she "conspired to launder

3  more than $10,000" and was therefore an aggravated felon within the combined meaning of

4  subsections (D) and (U). *Id.*

5         Likewise, here, Petitioner's plea agreement demonstrates he conspired to launder funds in

6  excess of $10,000. Dkt. 7-2 (Exhibit B). In particular, Petitioner admitted he conspired to

7  "defraud victims and launder funds," he admitted he knew the conspiracy's "transactions with

8  criminally derived proceeds, at times, exceeded $10,000," he admitted that his participation in

9  the conspiracy touched on (1) payments "totaling more than $27,000" and (2) "a wire transfer of

10  $36,274" between bank accounts, and, most importantly, he admitted it was "reasonably

11  foreseeable" to him that these amounts were derived from "the scheme intended to defraud

12  victims." *Id.* at 14–15. Thus, Petitioner's argument for why he is not an aggravated felon subject

13  to mandatory detention under § 1226(c) is unavailing.

14         Accordingly, the undersigned finds that Petitioner's detention is statutorily mandated

15  until his removal proceedings have concluded and that he is not entitled to release or a bond

16  hearing on statutory grounds.

17  **C.    Petitioner's Detention Comports with Due Process**

18         Even if mandatory under § 1226(c), the Court must next consider whether Petitioner's

19  continued detention without a bond hearing is consistent with due process. In this regard,

20  Petitioner argues that his ongoing detention violates due process and that he is entitled to either

21  immediate release or a bond hearing. Dkt. 3 at 5, 8–11; Dkt. 9 at 6–20. Respondent counters that

22  Petitioner's continued mandatory detention is reasonable and compliant with due process. Dkt. 6

23  at 7–13.

24

1    Established law permits Petitioner's mandatory detention pending removal so long as the

2    length of such confinement remains reasonable. Accordingly, the relevant inquiry before the

3    Court is solely whether Petitioner's term of mandatory pre-removal detention has exceeded

4    constitutional reasonableness.

5    In *Demore v. Kim*, the Supreme Court rejected a due process challenge to mandatory

6    detention under § 1226(c), holding that "the Government may constitutionally detain deportable

7    [noncitizens] during the limited period necessary for their removal proceedings." 538 U.S at

8    518–21, 526 (2003). Justice Kennedy's concurring opinion, which created the majority, reasoned

9    that, beyond this limited period, due process may require "an individualized determination as to

10   [a noncitizen's] risk of flight and dangerousness if the continued detention *became unreasonable*

11   *or unjustified*." *Id.* at 532 (emphasis added).

12   Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows

13   for arbitrary prolonged detention without any process is constitutional or that those who founded

14   our democracy precisely to protect against the government's arbitrary deprivation of liberty

15   would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Although the

16   due process analysis for extended detention under § 1226(c) remains an open question in the

17   Ninth Circuit,[2] this Court and "essentially all district courts that have considered the issue agree

18   that prolonged mandatory detention pending removal proceedings, without a bond hearing,

19   'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. 2:18-cv-1669-

20   RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation*

21

22

---

23   [2] *See Avilez*, 69 F.4th at 538 (declining to rule on whether due process required a bond hearing for a noncitizen
     detained under § 1226(c) and remanding to the district court for consideration of that claim); *Martinez v. Clark*, 36
24   F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for [noncitizens] detained under §
     1226(c) is not before us today. And we take no position on that question.").

1  *adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. 18-cv-

2  2447-AJN, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018)) (collecting cases); *Djelassi v.*

3  *ICE Field Office Director*, 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (granting habeas

4  petition and ordering bond hearing for noncitizen whose mandatory detention had become

5  unreasonably prolonged); *Ashemuke v. ICE Field Office Director*, No. 2:23-cv-1592-RSL-MLP,

6  2024 WL 1683797, at *6 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*,

7  2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (denying bond hearing where mandatory

8  detention was not yet unreasonable).

9        In cases involving § 1226(c), this Court applies the "multi-factor analysis that many other

10  courts have relied upon to determine whether § 1226(c) detention has become unreasonable."

11  *Martinez*, 2019 WL 5968089, at *6–7. This analysis, which is referred to as the *Martinez* test,

12  involves the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention;
13  > (3) whether the detention will exceed the time the petitioner spent in prison for the
> crime that made him [or her] removable; (4) the nature of the crimes the petitioner
14  > committed; (5) the conditions of detention; (6) delays in the removal proceedings
> caused by the petitioner; (7) delays in the removal proceedings caused by the
15  > government; and (8) the likelihood that the removal proceedings will result in a
> final order of removal.
16

17  *Id.* at *9.

18        The Court will now apply the *Martinez* test to assess whether Petitioner's ongoing

19  detention has become unreasonable.

20       1.    <u>Length of Detention to Date</u>

21        The current length of Petitioner's detention is the first and most important factor of the

22  analysis. *See*, *e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10. The

23  longer a noncitizen's mandatory detention continues beyond a "brief" period of detention, the

24  harder it is to justify without an individual bond determination. *See Sajous*, 2018 WL 2357266,

1  at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable',

2  and thus contrary to due process, than detention of less than six months."); *Martinez*, 2019 WL

3  5968089, at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing);

4  *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019)

5  ("Although there is no bright-line rule for what constitutes a reasonable length of detention,

6  Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*.");

7  *Ashemuke*, 2024 WL 1683797, at *4 (concluding the petitioner's ongoing detention of eleven

8  months—and seven months at the time his petition was filed—extended beyond a presumptively

9  valid brief period of detention); *see also Demore*, 538 U.S at 531 (upholding ongoing detention

10  of six months).

11       Here, Petitioner was detained for four months at the time he filed his Petition, and his

12  detention has now extended to approximately six months. Because Petitioner's current detention

13  has reached—but not yet exceeded—the brief period of detention upheld in *Demore*, this first

14  factor is neutral or, at most, weighs slightly in favor of granting a bond hearing.

15       2.    Likely Duration of Future Detention

16       The Court next "considers how long the detention is likely to continue absent judicial

17  intervention; in other words, the anticipated duration of all removal proceedings including

18  administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.

19       At this junction, any estimate as to how long Petitioner's detention will continue would

20  require a degree of speculation. Even so, Petitioner's representation that he is in the early stages

21  of his removal proceedings provides some context. Specifically, Petitioner represents that his

22  individual hearing on removal is scheduled for July 23, 2024, with the possibility for a lengthy

23  appeal process to follow. Dkt. 8 at 14–15. Thus, if Petitioner receives and appeals an unfavorable

24  removal decision, it is conceivable that his detention could continue for at least another 12

1   months. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions,

2   www.ca9.uscourts.gov/content/faq.php (last accessed July 1, 2024; addressing anticipated

3   timelines for civil appeal from notice of appeal until final decision). However, given the degree

4   of speculation involved in this estimation, the second factor weighs only slightly in favor of

5   granting a bond hearing. *See Ashemuke*, 2024 WL 1683797, at *4 (concluding uncertainty

6   inherent to removal proceedings weighed neutrally upon relief); *Barraza v. ICE Field Office*

7   *Director*, No. 2:23-cv-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023),

8   *report and recommendation adopted*., 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (acute

9   possibility of continued detention pending active appeal weighs in favor granting a bond

10   hearing).

11         3.    <u>Criminal History</u>

12         Under the third and fourth factors, the Court assesses the current length of detention

13   against the length of the detainee's criminal sentence and the nature of his crime. *Martinez*, 2019

14   WL 5968089, at *9; *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y, 2018). These factors

15   are indicative of whether the detainee would be a danger to the community or a risk of flight

16   such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262; *Ashemuke*, 2024

17   WL 1683797, at *5.

18         Here, Petitioner's criminal conviction resulted in a 24-month custodial sentence, and he

19   served approximately 14 months of that sentence. Dkt. 7-2 at 175 (Exhibit B); Dkt. 8 at 15. Thus,

20   Petitioner's ongoing detention has not exceeded his criminal sentence. Regarding the nature of

21   his crime, Petitioner argues he was not directly involved in harming any victims and, in this way,

22   it appears he seeks to distance himself from the admissions in his plea agreement. Regardless of

23   how he now chooses to characterize his criminal involvement, Petitioner pled guilty to

24   involvement in a substantial money laundering conspiracy.

1      According to Petitioner's indictment, the criminal enterprise in which he was admittedly

2 involved defrauded elderly and otherwise vulnerable victims of nearly $6 million. Dkt. 7-2 at 92

3 (Exhibit B). In his plea agreement, Petitioner admitted involvement in maintaining bank accounts

4 capable of receiving up to $450,000 of fraudulent payments from those victims. *Id.* at 15. Given

5 the length of Petitioner's sentence and the substantial conspiracy in which he was a part, the

6 Court finds the third and fourth factors weigh against a bond hearing.

7      4.   <u>Conditions of Detention</u>

8      Under the fifth factor, the Court considers the conditions of Petitioner's detention at the

9 facility where he is currently detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the

10 conditions under which the [noncitizen] is being held resemble penal confinement, the stronger

11 [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853,

12 860 (D. Minn. 2019) (citation and internal quotations omitted).

13      The current record is devoid of any evidence regarding the conditions of Petitioner's

14 detention at NWIPC. Thus, this factor weighs neither for nor against a bond hearing. *See, e.g.*,

15 *Ashemuke*, 2024 WL 1683797, at *6; *Barraza*, 2023 WL 9600946, at *6.

16      5.   <u>Delays in Removal Proceedings</u>

17      Under the sixth and seventh factors, the Court considers "the nature and extent of any

18 delays in the removal proceedings caused by the petitioner and the government, respectively."

19 *Martinez*, 2019 WL 5968089, at *10. A noncitizen is entitled to raise legitimate defenses to his

20 removal, "and such challenges to his removal cannot undermine his claim that detention has

21 become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, 2018

22 WL 3579108, at *9 (S.D.N.Y. July 25, 2018)). Thus, this factor only weighs against a petitioner

23 when he "has 'substantially prolonged his stay by abusing the processes provided.'" *Hechavarria*

24 *v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436

1  (2009)). On the other hand, unreasonable delays caused by immigration courts or government

2  officials weigh against a respondent. *Sajous*, 2018 WL 2357266, at *11.

3      Here, there is no allegation or evidence of any undue delays in Petitioner's ongoing

4  removal proceedings. As such, the sixth and seventh factor weigh neutrally on whether a bond

5  hearing should be ordered in this case.

6      6.    Likelihood Removal Proceedings Will Result in a Final Order of Removal

7      Finally, the Court considers "the likelihood that the removal proceedings will result in a

8  final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers

9  whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at

10  *10 (citing *Sajous*, 2018 WL 2357266, at *11). "Where a noncitizen has not asserted any

11  grounds for relief from removal, presumably the noncitizen will be removed from the United

12  States, and continued detention will at least marginally serve the purpose of detention, namely

13  assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a

14  good faith challenge to removal, 'the categorical nature of the detention will become increasingly

15  unreasonable." *Id*. (quotations omitted).

16      Given the current posture of Petitioner's removal proceedings, there is simply not enough

17  information available to allow the Court to predict whether Petitioner's removal proceedings will

18  result in a final order of removal. In the absence of sufficient information to assess the likely

19  success of any challenge to Petitioner's removal, the Court finds this final factor is neutral.

20      7.    Weighing the Factors

21      As discussed above, two factors clearly weigh in favor of Respondent, two of the eight

22  factors only weigh *slightly* in Petitioner's favor, and the remaining four factors are neutral. At

23  this juncture, the undersigned finds that the factors in Petitioner's favor (*i.e.*, the current and

24  future length of his detention) are outweighed by those favoring Respondent (*i.e.*, factors relating

1    to the underlying criminal conviction and sentence). Thus, the Court concludes Petitioner has not

2    demonstrated that his detention to date is unreasonable such that an individualized bond hearing

3    would be required to comport with due process.

4        Accordingly, the undersigned finds that the Petition may also be denied on the merits.

5                        **III.      CONCLUSION**

6        As set forth above, the undersigned recommends that Respondent's Motion to Dismiss

7    (Dkt. 6) be **GRANTED** and that Petitioner's federal habeas Petition (Dkt. 3) either be

8    **DISMISSED** for failure to exhaust or **DENIED** on the merits.

9        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

10   Procedure, the parties shall have fourteen (14) days from service of this report to file written

11   objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

12   objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C),

13   and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

14   U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

15   omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

16   matter for consideration on **July 30, 2024**, as noted in the caption.

17       Dated this 12th day of July, 2024.

18

19

20                          Grady J. Leupold
                            United States Magistrate Judge
21

22

23

24